## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 07-104 (JRT/AJB) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND** |
| (1) VIVIAN LOUISE WRIGHT, and | **RECOMMENDATION** |
| (2) SUKURA LOUISE SAMUELS, | |
| Defendant. | |

Andrew R. Winter, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Richard H. Kyle and Joycelin L. Benton, **FREDRIKSON & BYRON, P.A.**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402-1425, for defendant Wright.

Andrew H. Mohring, Assistant Federal Public Defender, **OFFICER OF THE FEDERAL DEFENDER**, 107 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendant Samuels.

Defendants Vivian Louise Wright and Sukura Louise Samuels are charged with one count of conspiracy to distribute and possess with intent to distribute crack cocaine. Defendants filed separate motions to suppress evidence and statements. Defendant Wright also filed a motion to sever the defendants. In a Report and Recommendation dated June 29, 2007, United States Magistrate Judge Arthur J. Boylan recommended that this Court deny defendants' motions. Defendants objected to the Report and Recommendation, and the Court has conducted a *de novo* review of those objections

pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2(b). For the reasons set forth below, the Court overrules defendants' objections and adopts the Report and Recommendation.

## BACKGROUND

On December 7, 2006, officers obtained a warrant to search the home of Sukura Samuels and Vivian Wright. The warrant application included an affidavit submitted by Minneapolis Police Officer Michael Doran. Officer Doran's affidavit contained information provided by a confidential informant. The affidavit stated that the information provided by the informant had been corroborated by Officer Doran's observations and had led to drug trafficking arrests in the past.

At approximately 5:45 p.m., officers arrived at the defendants' residence and executed the search warrant. Defendant Wright was home alone at the time of the search. Officer Doran arrived on the scene a short time later. When he entered the residence, defendant Wright was in handcuffs, seated on the living room floor. Officer Doran removed the handcuffs and moved Wright to the dining room table, telling her at that time that "this could work itself out." Officer Doran proceeded to ask Wright general biographical questions and to assess whether she was impaired by alcohol or drugs.

After approximately thirty minutes, Officer Doran permitted Wright to telephone defendant Samuels. Wright began sobbing during the phone call, and Officer Doran took the phone and spoke with Samuels. Five to ten minutes later, Samuels arrived at the

residence.   Samuels sat at the dining room table and spoke with Officer Doran and Wright.  Samuels was not placed in handcuffs.

Officer Doran advised the defendants that he wanted to interview each of them, and he brought them to an upstairs bedroom to conduct recorded interviews.   Upon entering the room, Officer Doran advised the defendants that they were under arrest.  He recited the *Miranda* warning to Wright from memory.  He also advised Samuels of her *Miranda* rights, but did not tell her that an attorney could be present during questioning, or that she could assert her right to silence and to counsel at any time during the interrogation.

Officer Doran then conducted separate, audiotaped interviews with Wright and Samuels, each lasting about five minutes.   Both defendants made incriminating statements during the interviews.  Both defendants acknowledged that they understood their *Miranda* rights and that they waived their right to remain silent and the right to an attorney.  Neither defendant requested an attorney during questioning or asked that the questioning stop, and both had significant prior histories with law enforcement.

Following the interviews, Officer Doran switched off the tape recorder and began "off-the-record" discussions with the defendants regarding their willingness to cooperate with law enforcement.  Officer Doran told the defendants that he wanted information regarding either two significant drug cases, or one gang-related firearm case.   In exchange for such information, he stated that he would not present the instant case for charging.  The defendants accepted this proposal and agreed to work together as a team. Under the informal agreement, the defendants were to remain in weekly contact with

Officer Doran.  Flight from the jurisdiction or new criminal conduct would violate the agreement.  Approximately four months after their initial arrest and interrogation, the present charges were filed against the defendants.

## ANALYSIS

Defendant Samuels filed a motion to suppress statements made during the interview with Officer Doran.  Defendant Wright filed separate motions to suppress evidence and statements as well as a motion to sever the indictment as to each defendant. The Court addresses each motion in turn.

## I. DEFENDANT SAMUELS' MOTION TO SUPPRESS STATEMENTS

### A. Motion to Suppress Statements Based on Sufficiency of *Miranda* Warnings

Samuels first argues that the *Miranda* warnings were deficient because Officer Doran failed to advise her that she had a right to counsel during questioning, or that she could invoke her right to silence or to cease interrogations at any time during the interview.  *Miranda* warnings must be given any time a suspect is in custody and subject to interrogation by law enforcement officials.  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Prior to police interrogation, the suspect must be warned "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed."  *Id.*  The Supreme Court has made clear that a "talismanic incantation" of these rights is not required to satisfy *Miranda*'s procedural safeguards.  *California v. Prysock*, 453 U.S.

355, 359 (1981); *Duckworth v. Eagan*, 492 U.S. 195, 202-03 (1989).   Rather, the warnings must "reasonably convey" a suspect's rights as required by *Miranda*. *Duckworth*, 492 U.S. at 203 (internal quotations omitted); *United States v. Caldwell*, 954 F.2d 496, 501-02 (8th Cir. 1992).

Samuels does not dispute that she was advised of her right to counsel and her right to remain silent.   Rather, she argues that Officer Doran failed to specifically advise her of her right to have counsel present *during questioning*, and failed to advise her that she could, at any time, invoke her right to counsel or her right to remain silent.   Samuels also contends the Magistrate Judge improperly concluded that, because Samuels was present when Officer Doran advised defendant Wright of her *Miranda* rights, Samuels was effectively given the full *Miranda* warning.

Even assuming that Samuels was not present when Officer Doran advised Wright of her *Miranda* rights, however, the Court finds that the *Miranda* warning administered to Samuels was not deficient.   The Eighth Circuit has held that *Miranda* does not require that a defendant be advised that he has a right to have counsel present during questioning, so long as the police officer has not suggested that the right to counsel attaches only at a future point in time after interrogation.   *United States v. Caldwell*, 954 F.2d 496, 502 (8th Cir. 1992); *see Duckworth*, 492 U.S. at 203-04 (holding that informing a suspect that an attorney would be appointed "if and when you go to court" did not render the *Miranda* warnings inadequate because the suspect had been told that he had the right to an attorney before and during questioning).   Nor must a suspect be specifically advised that his right to silence is continuous.   *Miranda* imposes procedural safeguards that are designed "to

inform accused persons of their right of silence and *to assure* a continuous opportunity to exercise it." *Miranda*, 384 U.S. at 444 (emphasis added).  Thus, while a defendant must be provided a continuous opportunity to exercise his *Miranda* rights, nothing in *Miranda* requires that a defendant be advised that he can exercise those rights at any time during the interview.  *See, e.g.*, *United States v. Beery*, 2000 WL 1290406, at *5 (D. Kan. Aug. 1, 2000) (rejecting argument that *Miranda* warning was deficient where the defendant was "never informed that he could exercise his right to silence or counsel at any time during the interrogation").

For these reasons, the Court finds that the *Miranda* warning administered to defendant Samuels was not inadequate, and denies Samuels' motion to suppress statements.

### B.      Motion to Suppress Statements Based on Rule 5 Violation

At the time of their initial arrest, Officer Doran promised to withhold charges against defendants in return for their cooperation in other criminal investigations. Approximately four months later, Samuels was charged with a conspiracy offense and made an initial appearance before the Magistrate Judge.  According to Samuels, the four-month delay between her arrest and her initial appearance before the Magistrate Judge requires suppression of her statements under Rule 5 of the Federal Rules of Criminal

Procedure.[1]  Samuels further argues that this "catch-and-release" police tactic violates the Supreme Court's decision in *Missouri v. Seibert*, 542 U.S. 600 (2004).

Rule 5(a) requires an arresting officer to take an arrested person before a magistrate judge "without unnecessary delay."  Fed. R. Crim. P. 5(a)(1)(A).  Statements elicited from a defendant during a period of unnecessary delay may be inadmissible. *Mallory v. United States*, 354 U.S. 449, 453 (1957); *United States v. Collins*, 652 F.2d 735, 740 (8th Cir. 1981).  Suppression under Rule 5(a) is warranted in certain circumstances because "the simple fact of custody is coercive.  It is a subtle form of pressure that plays against the will of a suspect, the effects of which are most difficult to measure."  *United States v. Bear Killer*, 534 F.2d 1253, 1257 (8th Cir. 1976).  In determining the admissibility of statements made between the defendant's arrest and his presentment to a magistrate judge, courts inquire whether the statement was made voluntarily.  18 U.S.C. § 3501(c) (providing that such statements "shall not be inadmissible solely because of delay . . . if such confession is found by the trial judge to have been made voluntarily"); *United States v. Pugh*, 25 F.3d 669, 675 (8th Cir. 1995).

To determine whether the delay in presentment is itself impermissible under Rule 5(a), courts "look to the point of time at which the government had probable cause to arrest a defendant then in custody in order to measure the length of the delay."  *United States v. Jackson*, 712 F.2d 1283, 1285 (8th Cir. 1983).  Rule 5(a) "applies only to persons

---

[1] Defendant Wright makes a similar argument in support of her motion to suppress statements.

arrested and held under federal law." *United States v. Elliot*, 435 F.2d 1013, 1015 (8th Cir. 1970).

The Court finds that Rule 5 does not require suppression of defendants' statements in this case.  Officer Doran obtained the incriminating statements within approximately one hour of the initial execution of the search warrant.  Thus, even if the four months that elapsed between the initial arrest and presentment to the magistrate judge constitute an unnecessary delay under Rule 5(a), the statements in question were not elicited from the defendants during the period of unnecessary delay.[2]

Even if they were, however, the Court agrees with the Magistrate Judge that the defendants made the statements in question voluntarily.  In so deciding, the Magistrate Judge evaluated the voluntariness factors under *Pugh*, including 1) the length of the delay, 2) whether the defendant was aware of the nature of the offense at the time of the statement, 3) whether the defendant was advised that a statement was not required, 4) whether the defendant was advised of the right to counsel prior to questioning, and 5) whether counsel was actually present during questioning.  25 F.3d at 675 (citing 18 U.S.C. § 3501(b)).  Samuels now objects that the voluntariness inquiry, as set forth in

---

[2] For this reason, the Court need not determine whether the four-month period between defendants' initial arrest and their presentment to the magistrate judge constitutes an "unnecessary delay" under Rule 5(a).  The Court notes that defendants were not formally "arrested and held under federal law" during the four-month period in question. *Elliot*, 435 F.2d at 1015.  Nevertheless, the informal agreement between defendants and law enforcement imposed conditions of cooperation on the defendants, including a provision that defendants not leave the jurisdiction.  It is conceivable that conditions imposed on a suspect pursuant to a "catch-and-release" agreement could be tantamount to "custody," triggering a Rule 5(a) violation and providing the suspect with an appropriate remedy, such as suppression or even dismissal.  However, such a showing has not been made in this case and the Court leaves this issue for another case and another day.

§ 3501(b) and as applied by the Eighth Circuit in *Pugh*, was effectively overruled by the Supreme Court in *Dickerson v. United States*, 530 U.S. 428, 436-37 (2000).

In *Dickerson*, the Court interpreted § 3501(a) and (b) as an attempt to override *Miranda* by making voluntariness the sole test for admissibility of a confession, such that the presence of *Miranda* warnings was merely one factor in the voluntariness analysis. *Id.* at 436. The Court went on to hold that *Miranda* was a constitutional decision, and that § 3501 was therefore without effect to the extent it sought to overrule *Miranda*. *Id.* at 444; *Seibert*, 542 U.S. at 609. However, courts continue to determine the admissibility of statements made between a suspect's arrest and his initial appearance under § 3501(c) by reference to the voluntariness factors set forth in § 3501(b). *United States v. Corley*, --- F.3d ---, 2007 WL 2458536, at *5-6 (3d Cir. Aug. 31, 2007) (noting that at least four courts of appeals, including the Eighth Circuit, read § 3501(c) to refer to the voluntariness factors under § 3501(b)). As such, the Magistrate Judge properly applied the voluntariness framework set forth in *Pugh* to determine whether defendants' statements should be suppressed under Rule 5(a).

Finally, Samuels contends that the appropriate framework for evaluating defendants' statements is set forth in the Supreme Court's decision in *Seibert*, 542 U.S. at 613. *Seibert* considered the propriety of a police procedure called "question first," whereby the questioning officer would obtain incriminating statements from a suspect, and only *then* give a *Miranda* warning, eliciting the same incriminating statements during

a second, post-*Miranda* interview.  Justice Kennedy, in a concurring opinion,[3] found that the "question first" policy violated *Miranda* because it was deliberately devised to obtain incriminating statements by circumventing *Miranda*.   *Id.* at 621 (Kennedy, J., concurring); *United States v. Briones*, 390 F.3d 610, 613-14 (8th Cir. 2004).   However, there is no evidence in this case to suggest that the "catch-and-release" procedure was deliberately devised to circumvent *Miranda*.   Indeed, the statements at issue were obtained only after defendants were adequately informed of their *Miranda* rights.   As such, the Court finds that *Seibert* does not preclude the particular police conduct in this case.

For these reasons, the Court concludes that Rule 5 does not require suppression of defendants' statements. Samuels' motion to suppress is therefore denied.

## II.      OBJECTIONS OF DEFENDANT WRIGHT

### A.      Motion to Suppress Search and Seizure Evidence

Wright argues that Officer Doran's search warrant affidavit was insufficient to establish probable cause.   Wright contends that the affidavit failed to establish the reliability of a confidential informant because it did not discuss his prior experience with the informant or the informant's success rate.

The Fourth Amendment requires a showing of probable cause before a search warrant may be issued.  *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007).  To

---

[3] Justice Kennedy's concurring opinion has been recognized by the Eighth Circuit as the holding of the Court because it presents the narrowest ground of decision.  *United States v. Briones*, 390 F.3d 610, 613-14 (8th Cir. 2004); *see Marks v. United States*, 430 U.S. 188, 193 (1977).

establish probable cause, a search warrant affidavit must allow for a "practical, common sense" determination that there is a "fair probability" that contraband or similar evidence will be found at the targeted location. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Where the affidavit is based on information provided by an informant, "the informant's reliability, veracity, and basis of knowledge are relevant considerations -- but not independent, essential elements -- in finding probable cause." *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986).

The Court finds that Officer Doran's affidavit provided sufficient information to establish the informant's reliability. The affidavit stated that "[i]nformation provided by the [informant] has been proven to be true and correct and also corroborated by officer's observations." (Motions H'g Ex. 1.) The affidavit also notes that information provided by the informant has led to arrests of individuals involved in drug trafficking and to the recovery of drugs and other paraphernalia used in drug trafficking. The Court finds that the affidavit was sufficient to support a finding of probable cause. Wright's motion to suppress search and seizure evidence is therefore denied.

### B.    Motion to Suppress Statements

Wright next argues that her statements during the recorded interview were not made voluntarily and must therefore be suppressed.[4] The test for determining whether a statement is voluntary is whether the statement was "extracted by threats, violence, or

---

[4] Wright also argues that her statements should be suppressed under Rule 5(a) of the Federal Rules of Criminal Procedure. As discussed above, the Court declines to suppress defendants' statements under Rule 5(a).

direct or implied promises, such that the defendant's 'will [was] overborne and his capacity for self-determination critically impaired.'" *United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995) (quoting *Columbe v. Connecticut*, 367 U.S 568, 602 (1961)).  To make this determination, courts "inquire into the totality of the circumstances in assessing the conduct of law enforcement officials and the suspect's capacity to resist any pressure. *Id.*

The Court finds no evidence that Officer Doran used threats or violence toward Wright to extract a statement during the interview.  The interview itself lasted less than ten minutes.  Further, Wright has significant experience with the criminal justice system, including numerous felony convictions, and she was likely aware of the potential benefits to be obtained by cooperating with law enforcement.  Wright contends that Officer Doran's statement that "this could work itself out" critically impaired her capacity for self-determination because, without it, she would not have felt compelled to give a recorded statement.  Even if Officer Doran's statement could be construed as a promise of leniency, however, such a promise does not by itself render a confession involuntary. *See Sumpter v. Nix*, 863 F.2d 563, 565 (8th Cir. 1988); *Kilgore*, 58 F.3d at 353.  The Court finds that, based on the totality of the circumstances in this case, Wright has not shown that her will was overborne or her capacity for self-determination critically impaired.  Wright's motion to suppress statements is therefore denied.

### C.      Motion to Sever

Finally, Wright argues that the defendants should be severed and tried separately because her joinder with defendant Samuels is prejudicial.  Specifically, Wright contends that Samuels purchased a gun that was found in the home, that Samuels was the primary dealer, and that these facts would be prejudicial to Wright.

Under Federal Rule 14(a), the Court may sever defendants' trials if joinder appears to prejudice a defendant.   Fed. R. Crim. P. 14(a).   To grant a motion for severance, "the necessary prejudice must be 'severe or compelling.'"   *United States v. Pherigo*, 327 F.3d 690, 693 (8th Cir. 2003) (internal citation omitted).  Prejudice is severe where the jury is incapable of compartmentalizing the evidence.   *United States v. Koskela*, 86 F.3d 122, 126 (8th Cir. 1996).   In determining the jury's ability to compartmentalize the evidence, courts consider the complexity of the case and the adequacy of admonitions and instructions of the trial judge.  *Pherigo*, 327 F.3d at 693.  In conspiracy cases, however, "[t]he general rule is that co-conspirators should be tried together," *United States v. Kuenstler*, 325 F.3d 1015, 1024 (8th Cir. 2003), and severance should not be granted if "less drastic measures, such as limiting instructions . . . will suffice to cure any risk of prejudice." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

The Court is not persuaded that the potential prejudice in this case is severe or compelling.  Any risk of prejudice to Wright that might result from evidence of Samuel's purchase of the gun, or of her involvement as the primary drug dealer, can be sufficiently cured through the use of limiting instructions with respect to that evidence.  For this reason, the Court denies Wright's motion to sever.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** the objections of defendant Samuels [Docket No. 60] and defendant Wright [Docket No. 57] and **ADOPTS** the Report and Recommendation [Docket No. 56]. **IT IS HEREBY ORDERED** that:

1.      Defendant Samuels' Motion to Suppress Evidence Obtained as a Result of 12/7 Search and Seizure [Docket No. 39] is **DENIED**.

2.      Defendant Samuels' Motion to Suppress 12/7 Statements [Docket No. 40] is **DENIED**.

3.      Defendant Wright's Motion to Suppress Statements [Docket No. 22] is **DENIED**.

4.      Defendant Wright's Motion to Suppress Search and Seizure Evidence [Docket No. 23] is **DENIED**.

5.      Defendant Wright's Motion for Severance [Docket No. 24] is **DENIED**.


DATED: January 14, 2008                              **s/John R. Tunheim**
at Minneapolis, Minnesota.                           JOHN R. TUNHEIM
                                                     United States District Judge